The final case on the calendar for argument today is Milan-Hernandez v. Barr, number 18-2107. Good morning. May it please the court. Aditi Padmanabhan for the petitioner Maria Milan-Hernandez. I'd like to reserve two minutes for rebuttal. Ms. Milan asks the court to reverse the agency's denial of a suppression hearing. In Zuniga-Perez, this court set out the standard for when a person is entitled to a suppression hearing in immigration court. Zuniga-Perez explains that a hearing is appropriate when fair questions exist about the legality of the seizure and about whether race was a factor. The court also recognized that at this stage, the evidence must be viewed in the light most favorable to the petitioner. Ms. Milan's offer of proof meets and exceeds the standard. Specifically, a reasonable fact finder could find that the evidence suggests that Officer Wagner, who stopped the car in which Ms. Milan was a passenger, was acting based on race. There's three reasons for this. First, because of what this court just two months ago in Rodriguez v. Barr called the sheer paucity of evidence supporting a finding of probable cause. Second, because of the unusual and jarring language that the officer used in what should have been a routine traffic stop. And third, because Officer Wagner sharply detoured from the original mission of the stop and far exceeded the scope of his lawful authority. There's an undisputed Fourth Amendment violation in this record, and based on the record, a fact finder could infer that race motivated the seizure. So I'd like to address each of those three points in additional detail. So starting with the first point, sheer paucity. There's no evidence in the record supporting a reason to believe that the passengers, of which Ms. Milan was one, engaged in any wrongdoing. No one was cited for any criminal or traffic infraction. And as for immigration status, the only thing the officer knew about the passengers was the way they looked. So in reciting these facts to us, what are you relying on? My understanding is here, what we're focusing on is whether Ms. Milan's affidavit was sufficient to raise a question that would require the BIA to conduct a hearing. Correct, Your Honor. We're relying primarily on her affidavit, which you have to take as true, given the stage that we're at. We also have the police report in the record. The police report confirms her statement of the facts to a large degree. And both of those documents taken together show that the officer knew nothing about the passengers in the car when he assumed they were undocumented. Rodriguez, which talks about sheer paucity, supporting a finding of racial motivation, cites with approval a Third Circuit case, YACUS, which we discuss in our reply brief. And YACUS had very similar facts to this one. The car was stopped, the driver didn't have a driver's license, and the officer opens up the back of the van and says to the people in the back, I need to see your immigration paperwork. And there the court said, when he asked for that paperwork, he was assuming those people were not U.S. citizens, a conclusion he could have only come to based on appearance. You don't even need to go as far as YACUS. All you need to find is that a person could reasonably infer that the officer was motivated by race. The second key category of evidence that this court can look at to find that a reasonable fact finder could infer that race was a motivating factor is the language that Officer Wagner used. It's unusual, jarring language to use during a routine traffic stop. You're not legal right, show me your papers. It's difficult to imagine that language, an officer using that language to a car of non-Hispanic occupants, even if the driver had produced, say, a Canadian or a French passport. And the third key piece of evidence that this court can look at is the officer's sharp detour from the mission of the stop. He never comes back to it. He's laser focused on immigration and enforcement from the point he says, show me your papers, even though there's no probable cause to suspect the passengers of anything. And I wanna address one issue that might be relevant to the court's analysis of this, which is that the officer perhaps knew more about the driver, right? Ms. Milan wasn't the driver, she was a passenger. About the driver, the officer knew that he had a foreign passport. But courts are wary of guilt by association theories of probable cause, and for good reason. This isn't the type of circumstance in which an officer comes upon lots of drugs or lots of weapons and so thinks there's a common enterprise amongst the occupants of the car. Unlawful presence, like unlicensed operation of a vehicle, is an individualized offense. That it might be true of me says nothing about the person next to me. And there's lots of reasons why people of mixed immigration status could be traveling in a car together. Plenty of families in this country have different immigration statuses amongst the family members. And in this case, you have coworkers carpooling together, at least one of whom has status, and who is also assumed to be undocumented by the officer, just like everyone else in the car. Let me just ask you, I think there's also an issue that the agency applied the wrong test here that the government, at least points in its brief, seems to make the same mistake, saying that Ms. Milan Hernandez failed to establish a prima facie case for suppression, but that's not the standard when you don't have a hearing, right? It's just whether it could have been based upon race. Exactly right, Your Honor. The prima facie case consists of both Ms. Milan's affidavit  under the prevailing agency standard at the hearing. So the agency, there's a part of the BIA decision, by the way, which recognizes that those are both necessary components of the prima facie case. So the agency perhaps at some point recognizes the right standard, but it doesn't apply the correct standard when it's looking at these facts. And it also ignores, of course, the strong evidence in this record from which a fact finder could infer that Officer Wagner was motivated by race. So if we were to agree with you and grant the petition, the matter would go back to the BIA to hold a hearing on the suppression motion, is that right? I believe it would go back to the BIA and then remanifest. And then go back to the IJ. Exactly, and what we're asking for is a hearing. The first thing that'll happen at the hearing is that Ms. Milan has to testify, that's a necessary component of her prima facie case. And then she would get to do what people do at suppression hearings. She'd subpoena documents, she'd ask the officer to testify, and it's gonna ultimately come down to a factual dispute that we need a hearing to resolve. And that's what we're asking for. Just one final point, Your Honor, about what should have happened here. At some point early on in this encounter, the officer should have realized that he had nothing to do with the passengers. If he wanted to hold the driver, he could have done that, but then he should have said the passengers were free to leave. According to Ms. Milan's affidavit, she was five minutes away from her final destination. They were in the middle of the village of Albion on a warm July night. They could have walked to where they were going. The officer didn't allow them to do that. He held them to enforce immigration laws, which he had no authority to enforce. And there's plenty of evidence in this record from which a reasonable fact finder could conclude that race was a motivating factor. All right, thank you very much. We'll hear from the government. May it please the court, Colette Winston for Attorney General Barr. In order to suppress evidence in a removal proceeding, the petitioner has the burden of proving or showing an egregious violation that is fundamentally unfair. That means a violation that transgresses traditional notions of fairness. Here, the only issue is whether an egregious violation occurred. It did not. In order to show- It's whether a suppression hearing should have been held and whether enough had been submitted to require the agency to hold a hearing and give the petitioner an opportunity to present a fuller description of the facts, testimony, and documents, and so on. That is correct. But in order to get to a suppression hearing, there's a burden of proof on the petitioner to show through an affidavit or declaration, through the police report, that an egregious violation occurred. They would only have to show that the affidavit and the other documents could support that this officer was motivated by race in asking the questions and then detaining her for two hours, right? Isn't that the standard here? It's not prima facie case. It's could her declaration and the other documents, the police report, could it support that this was based upon race, right? Or am I misarticulating that? I think that's what we've said over and over again in cases, that that's the standard. Many of the cases talk about prima facie case. They talk about prima facie case after the evidentiary hearing, right? I don't know how to pronounce it. The Cota J case, we said, to get a hearing, all you have to have is facts, if true, that could support a basis for excluding the evidence, right? That's right. Cota J did say that, but Cota J also talks about a prima facie case, that it has to be, even, even. Let me just ask you, let me ask you the bottom line question. What, why, what would be the basis for asking a passenger in a car for your papers? What was the basis for the officer to do that? If it wasn't motivated by the color of the passenger's skin? There was a very clear basis, and that is right in her own affidavit. Immediately thereafter, I'm quoting from the affidavit, the police officer said, I need to see a driver's license. So the whole point of the police officer. The police officer didn't ask her for her driver's license. The officer doesn't say, show me your driver's license. He said to the driver, you're illegal, right? And then turned to the passenger and said, give me your papers. The reasonable inference, again, could it's, reasonable inference is that, similar to the Third Circuit case, he was assuming the passenger was illegal. But in the Third Circuit case, Yokus, the affidavit itself, unlike the affidavit here, the petitioner said, we were stopped because of our Hispanic appearance on page 103. We were stopped because we were speaking Spanish. Ms. Milan-Hernandez doesn't say anything in her two-page affidavit that she was stopped because of her Hispanic appearance, or told not to leave the car, because she was a passenger, because she was a passenger. If that is a reasonable inference based on the description, she doesn't guess at the officer's motivation, but she lays out facts, suggesting that the only basis for the detention for two hours of the passengers in the car, without any further follow-up as to any traffic violation or criminal activity, was what we're, what counsel suggests is a reasonable inference, that they were being held because of their race and suspected illegality of their presence in the United States. Or another inference, which is just as reasonable, if not more, is that no one had a driver's license. The driver who was driving the car. Why is it relevant that a passenger didn't have a driver's license? Someone had to drive the car. So what the police officer was doing, and it was both in the police report and in the affidavit, was asking, I need to see a driver's license, quote unquote, from the affidavit. He asked the driver that, not Ms. Hernandez. But then in the police report, on the second page, it said, the officer identified that the driver did not have a license, and nor did anyone else in the vehicle. Don't you think there's a difference between asking someone, do they have a license, and show me your papers? Don't you think there's a difference in that? I do think there is a difference. Why isn't a reasonable inference that when an officer turns to a passenger and doesn't say, he doesn't have a license, show me your license, someone has to drive the vehicle, but says, show me your papers, and that he is, at that point, being motivated by something other than, I need someone to drive this car away. There's no evidence in the record that he was looking for someone to drive the car away at that point, right? He had just stopped them. He had stopped because the car, and one member. He didn't arrest, he didn't arrest the driver and say, I'm arresting the driver, someone's gotta drive this car. Who has a license? When I know one of those situations, he had just questioned the driver who produced a foreign passport and immediately then turned to the passenger to show me your papers. Right, when he saw the driver had a foreign passport, he wanted to see the papers for everybody. That doesn't mean that it was race-based. You think an officer, if a driver does not have, produces a foreign passport, can then assume that everybody in the car is illegal and ask them for their papers? Is that what you're arguing to this court? I don't think he assumed it. I think he was ferreting out the information from the other. He has no authority. He has no authority to enforce the immigration laws. You can see that, right? I'm sorry, he has no authority to? Force the immigration laws. He can't, he detained them for two hours. He doesn't have the authority to detain people to enforce the immigration laws, right? He was not enforcing the immigration laws. He contacted the border patrol. He detained them for two hours, right? Ultimately, they were detained for nearly two hours. By him. By him. By him waiting for the border patrol to come. What case do you have that says that an officer can detain someone for two hours who's suspected of no criminal wrongdoing so that the immigration authorities can get there? What case? Well, in the Melnytsenko case, they detained the individuals for three hours. And that was found not to be egregious. Egregiousness is the issue. Was, was this, does this case present? I think I sidetracked you on that question. If there's race motivating it, it doesn't matter how severe the violation is, right? Race is a different category. So that's where. Race is also egregious or other, other. Race is egregious in and of itself. So you don't have to analyze is two hours too long or not. So that's really their argument here. They're not arguing that the two hours is too long and it's egregious. They're arguing race. Correct. But her affidavit, unlike affidavits in other cases, does not even allege even slightly that she was detained because of her race. But again, if the standard as Judge Bianco has been suggesting is could the affidavit support, could it support such an inference? Do you think the affidavit cannot support an inference that this was a race motivated detention? I do. You think it cannot? On this particular affidavit, unlike affidavits in other cases, this affidavit does not mention race in any way. So you think she should have included an additional sentence at the end that said, I believe that I was detained based on race. That would have been helpful to her case. Or she could have said, I was detained because I had an accent. Or I was detained because he flashed a flashlight in the middle of the night and looked at my features or something that showed race. But there's nothing in here. And in the other affidavits, like in Yokus and Zuniga Perez, there's allegations. These were white passengers. He would have never said to, if it was a white passenger, show me your papers, that that assumption was made because of the color of her skin. What's your response to that? That if there was a white passenger, he would have said, show me your papers? I wouldn't know. That's speculation. That's conjecture. But you can't just go on intuition. Even if someone has an intuition, that's not enough to be egregious. And the Almeida-Amaral case states just that. Even though there could be an intuition that race was involved, that's not enough to show egregiousness. Egregiousness is more than being unreasonable. Of course, we're not asking right now whether egregiousness was demonstrated. We're asking whether there was enough alleged to require the agency to hold a hearing to explore egregiousness, at which point further facts and inferences could be explored based on what the description of the event was, right? Understood, but the affidavit itself makes absolutely no statement in any way that race was involved. And the police report, which is the other key piece of evidence, also made no inference in any way that race was involved. If you look at the Rodriguez case from last November, there were racial slurs made by the police officer, derogatory remarks, discriminatory statements. That's enough for the petitioner to meet the threshold to get the suppression hearing. But in this case, there wasn't enough. What other basis was there for detaining these individuals for two hours in the middle of the night? Because the police officer felt- Or waiting for ICE? He had to contact immigration officials because no one produced a driver's license and they showed papers that showed that they weren't here legally. And he suspected they weren't here legally, but that doesn't mean that he was using race as a basis for that. It was just middle of the night, group of people, and he made that suspicion. But there's the affidavit says nothing. Okay, thank you. And that's the problem. Thank you. Thank you, Your Honor. We'll hear from your adversary. Maybe she can address that concern. Thank you, Your Honors. Just to clarify, the concern is that Ms. Millon didn't say, I believe I was stopped based on race? The affidavit doesn't mention race or describe enough to support an inference that the stop and detention were based on race and therefore potentially egregious. Sure, Your Honor. I think what Ms. Millon was doing was offering objective facts from which a fact finder could infer that race was a motivation. She left the legal arguments to her lawyer. The lawyer connected the dots and said, this is how a fact finder could infer that race was a motivation. I wanna, I just have three other points that I'd like to make just briefly. First, Judge Bianco, you asked for a case supporting the idea that the officer had the authority to enforce civil immigration law. In fact, the Supreme Court case, Arizona v. United States, stands for the opposite proposition that local and state officials do not have any authority to enforce civil immigration laws, which is what this officer was doing. My second point is I wanna just reemphasize a point that I think both Judge Carney and Judge Bianco have been making, which is the standard at this point in the early stage of proceedings, all we're asking for is a hearing. All we have to do to get a hearing is show that the evidence could support a basis for exclusion. Zuniga Perez refers five times to whether petitioners have raised fair questions. We've more than done that. And then I think just, you know, I'd like to conclude by emphasizing what's so egregious about this situation. If Officer Wagner's problematic conduct doesn't even merit a hearing where an immigration court takes a closer look at what happened here, that leaves American citizens who look foreign to people like Officer Wagner and who can't immediately prove up their citizenship on command at high risk of harassment every time they get in a car. In Zuniga Perez, this court said that immigration enforcement based not on individualized suspicion, but on ethnic stereotyping is really pernicious. That's exactly what we have here. And we're asking the court to follow Zuniga Perez and Rodriguez and order a hearing for Ms. Millon. Thank you very much. We'll reserve decision. We have two more cases on the calendar for today that we have on submission. Olayzola v. Foley, number 19574 and United States v. Castillo, 193702. The clerk will please adjourn court. Thank you.